Farr, J.
In February, 1918, Frederic D. Antonio was -charged in the municipal -court of the city of Youngstown, Mahoning county, under Section 12428, General Code, with torture. He was found guilty and sentenced by the judge of said court to pay a fine of twenty-five dollars and the costs of prosecution, and to be imprisoned in the jail of Mahoning -county for a period of thirty days, and until bis fine and -costs were paid.
Antonio was committed to the -county jail on the -thirteenth day of February, 1918, and a little later paid said fine of twenty-five dollars and costs of prosecution, whereupon the judge of the municipal court suspended the sentence as to • further punishment and issued an order for his release from jail, which order the sheriff of said county *358 declined to honor, or to release plaintiff in error.
An application or petition was filed in the court of common pleas of this county for a writ of habeas corpus. The writ was allowed and duly served. In obedience to the writ Antonio was produced in court, and upon hearing the court held that the judge of the municipal court having sentenced and committed Antonio to the county jail, and the sheriff having taken charge of him under such sentence, the court had lost jurisdiction and could not, therefore, suspend or modify the sentence.
There' are two sections of the General Code which relate to suspension of sentence. The first is Section 13706, which provides that certain prisoners may be put upon probation. This is the general section which applies in case of first offenders. The'next section, and the one involved here, is Section 13711, General Code, which provides in part:
“When the sentence of the court or magistrate is that the defendant be imprisoned in a workhouse, jail, or other institution, except the penitentiary or reformatory, or that the defendant be fined/and committed until such fine be paid, the court or magistrate may suspend the execution of said sentence and place the defendant on probation, and in charge of a probation officer named in such order, in the following manner:”
Then follow paragraphs one and two, which relate to the manner in which a defendant may be placed on probation.
As above stated, upon payment of fine and costs by Antonio, two days after he had been committed to the county jail, the judge of the municipal court *359 issued an order directed to the sheriff, which order reads as follows:
“Please release Frederic Antonio sent from this court on-the 13th day of February, 1918, on charge of torture, to serve out $25.00 fine and $4.00 costs and thirty days.
“This release is made and given after good cause shown to the court that the said Frederic D. Antonio should have his sentence suspended, as provided for in Section 13711, of the General Code, and for the further reason that the court is of the opinion that the said Frederic D. Antonio should be placed upon probation for this crime.
“Witness my hand this 15th day of February, 1918.
“George FT. Gessner,

“Judge of the Municipal Court of Youngstown, Ohio.”

It was this order for release that the sheriff declined to honor or recognize, upon the theory that the municipal court had lost jurisdiction of the 'defendant, and also that the making of such order ■was the exercise of the pardoning power. It is plainly indicated in this order that it was given under said Section .13711, General Code, so that the only question to be determined here is whether or not the judge of the municipal court had such control over the judgment in said cause as he sought to exercise by said order.
The statute provides that the municipal court of the city of Youngstown shall have four terms of court each year, beginning on the first day of Jan *360 uary and continuing for .periods of three months each throughout the year, so that it is clearly disclosed ’that the charge, sentence, commitment, and the order for release, were all made during the first term of said municipal court in this year, A. D. 1918; therefore there is no question but that the court sought to modify or suspend the sentence during the term at which the judgment was entered.
A case somewhat in point and of -some value here is Lee v. The State of Ohio, 32 Ohio St., 113. This is a case where a party was convicted of a misdemeanor and sentenced to pay a fine of ten dollars and the costs of prosecution, but the sentence was not put into execution. Later the party was taken into court on a subsequent charge, and the question arose as to the right of the.court to revise the former sentence, which had not yet gone into execution, and upon review it was held as follows in the first paragraph of the syllabus:
“Where- a court, in passing sentence for a misdemeanor, has acted under a misapprehension of the facts necessary and proper to be known in fixing the amount of the penalty, it may, in the exercise of judicial discretion and in the furtherance of justice, at the same term, and before the original sentence has gone into operation or any action has been had upon it, revise and increase or diminish such sentence within the limits authorized by law.”
It is urged by the state that this case is scarcely in point, for the reason that the sentence had not gone into execution. However, that seems not to 'have been known by the trial court which imposed *361 the sentence, as it is disclosed by the facts that the court was not aware that its sentence had not been put into execution, and the court assumed the right to and did alter or change its former judgment upon the theory that it had originally acted under a misapprehension of the facts.
Johnson, J., speaking for the court, at page 114, quotes from Lord Coke, and it is well known this is a leading authority upon this question, somewhat ancient, indeed, but well in point here:
“It is said by Lord Coke (Co. Litt. 260a) that, ‘during the term wherein any judicial act is done, the record remaineth in the breasts of the judges of the court, and in their remembrance, and therefore the roll is alterable during that term, as the judges shall direct; but when that term is past, then the record is in the roll, and admitteth of no alteration, averment or proof to the contrary/”
The foregoing is authority for the view that the court, because the term had not yet passed, had control over its own orders and judgments, and it was held in said case that the court had a right not only to modify but to extend the sentence, and declare that the defendant, instead of paying a fine of ten dollars, should pay one of thirty dollars and costs. Bearing upon the question involved in the -foregoing is the case of Tracy et al. v. The State of Ohio, 8 C. C., N. S., 357, 358, 28 C. C., 453.
Another case ,of some, interest in this connection is Ammon v. Johnson, Gdn., 2 C. D., 149, 3 C. C., 263. This, too, was an application for a writ of *362 habeas corpus. In the éighth paragraph of the syllabus it is held:
“Where the court' has imposed a fine upon a witness refusing to answer, and ordered her to be imprisoned until she answers and pays the fine — it is within the power of the court during the same term of court, and while the action in which she refused to answer is still pending, and after her imprisonment has commenced, to remit the fine and that part of the sentence of imprisonment relating to it.”
In the above case, in which the case of Lee v. State is cited with approval in support of the view that a court' has control of its judgments during the term and that such right exists as well in criminal as in civil cases, it is observed by Baldwin, J., as follows (2 C. D., 154, 3 C. C., 272):
“In none of the cases cited in Lee v. State, is any reason given why there should be any difference in . the extent of power of the court during the same term over a civil case or one criminal or quasi criminal.”
However, the case of Weber v. State, 58 Ohio St., 616, is practically decisive of the issue here. It is held as follows:
“In a criminal case the court has power to suspend the execution of the sentence, in whole or in part, unless otherwise provided by statute; and has power to set aside such suspension at any time during the term of court at which sentence was passed. Whether such suspension can be set aside at a subsequent term is not decided.”
In accord with the foregoing is the case of Lee, Ex parte, 16 O. D., 259, 3 N. P., N. S., 533.
*363 A case well in point is Basset v. United States, 9 Wallace, 38, in which error was prosecuted to the judgment of the circuit court of the northern district of Ohio, and the fourth paragraph of the syllabus reads as follows:
“It is competent for a court, for good cause, to set aside, at the same term at which it was rendered, a judgment of conviction on confession, though the defendant had entered upon the imprisonment ordered by the sentence.”
In the foregoing, the defendant was charged with a misdemeanor, so that it is especially in point with the case at bar. Another is Ex parte Lange, 18 Wallace, 163, involving the same question at issue here, and -it cites the above case of Basset v. United States, in 9 Wallace. In the second paragraph of the syllabus it is held:
“The general principle asserted as applicable to both civil and criminal cases, that the judgments, orders, and decrees of the courts of this country are under their control during the term at which the}?- are made; so that they may be set aside or modified as_ law and justice may require.”
The reason for the foregoing is obvious; the court passing sentence and entering judgment', as in the instant case, should have the power, within a reasonable time, to so alter the -same as to meet the demands of justice. If for any reason, either by mistake or fraud, the court, in passing sentence, acted under a misapprehension of the facts, then the opportunity to exercise sound judicial discretion has been denied, and by every principle of right should be exercised by way of revision of sentence to secure the furtherance of justice and *364 the due administration of the law. It is urged that this is a dangerous power; if so, the same may be said of all judicial discretion, which, if shorn of the right to modify or suspend a judgment within a reasonable time limit, would be much more dangerous. The “time limit has been held to be the term at which judgment is entered,” and this for the .chief reason that after term time a record is presumed to have been made of all orders and judgments of the preceding term; that such record is complete, and the term having been adjourned formally, or by operation of law, the record imports absolute verity and is unalterable except as specifically provided by law. The power to revise judgments during term in such cases as under discussion here, and to correct errors and mistakes, is for the protection of the defendant and the pub-, lie alike; the principles which support it rest in reason -and it comes easily within the spirit of the statute under discussion here.
It will be observed that the judge of the municipal court in issuing said order states in it, “for good cause shown.” It was a modification of the original sentence, or a suspension of a part of the same, and not the exercise of the pardoning power as urged in argument; because the defendant had complied with a part of the terms of said sentence. Therefore, .for the reasons above given, and upon the theory that a court has control over its judgments and orders during the term at which they are made, the judge of the municipal court had a right in the case at bar to direct the release of the prisoner.
*365 The judgment is therefore reversed, and the plaintiff in error discharged.'

Judgment reversed; plaintiff in error discharged.

Pollock and Metcalfe, JJ., concur.